## 34395.   MUSTIN *v.* BARNES.

Decided July 15, 1953.

*Cumming, Nixon & Eve,* for plaintiff in error.

*W. D. Lanier,* contra.

Worrill, J. ■ The plaintiff in error contends that the evidence did not authorize the verdict for the plaintiff because there was no evidence that Getchell was authorized to make a contract with the plaintiff to cut the diversion ditch, and no evidence to

authorize the jury to find that the plaintiff was justified in assuming that Getchell had any such authority; that Getchell, at most, was a special agent of the defendant employed to supervise the removal of the old spillway and to design a replacement spillway of timber or of concrete, and the cutting of the diversion ditch was no part of the removal of the old spillway; that the plaintiff should have known of the lack of Getchell's authority to have the diversion ditch cut; that, as to the $162 item, the plaintiff knew of the limitation of $1,000 to be expended by her in the removal of the old spillway and was bound by that knowledge; and that her payment to him of $1,112 fully discharged her obligation to him on account of the removal of the old spillway.

These contentions are without merit, in that the evidence was sufficient to authorize the jury to find contrary thereto. While the evidence was in conflict on these issues, there was ample evidence that the plaintiff was justified in believing that the defendant's agent, Mr. Getchell, had authority from the defendant to have the diversion ditch cut. The plaintiff, H. E. Barnes, testified: "Right before Christmas, she (the defendant) came out there. She had been out there several times before that and I understood that she was going off on a trip, so she came out there a little before Christmas and Mr. Getchell, my brother, and Mr. Chavous came out there on the bank; . . and Mr. Getchell explained to her about putting the dam in and he told her the only way he could get this dam in there was to bypass this water around and she asked him, 'How can you do that? How are you aiming on doing that?' He told her, 'We will have to cut the dam.' She said, 'I would rather not have the dam cut if it can be avoided but if it can't be avoided, I will leave it entirely up to you.'" On cross-examination, the plaintiff testified: "I was present with Miss Mustin and Mr. Getchell when the agreement was made for me to remove the spillway. I turned to Miss Mustin there after we made the agreement, and she said to me, 'We will let you know the time,' after they had decided on the price and the labor and everything, and she said, 'We will let you know.' I turned to Miss Mustin and I said to her, like this, trying to make some adjustment about taking the old spillway out. She said, 'Mr. Barnes, don't ask me anything about it. Mr. Getchell is my agent and I don't know anything about it.' That was about

the removal of the spillway. Part of it had reference to the construction of the new dam. I never heard anything about her authorizing Mr. Getchell to build a new dam at that time. As to whether there is a new dam there now, I didn't put it there. Miss Mustin said Mr. Getchell was her agent for the removal of the spillway. The building of the new spillway was mentioned at that time. I heard she wanted to get a price on a timber dam and a concrete dam. . . I do not recall Miss Mustin saying she had so many thousand dollars to put in the removing of the old spillway and putting in a new one. I didn't hear that. I wasn't there. No, I wasn't present when she was discussing how much she had. I did not hear her say she had $1,000 for removing the old spillway. She asked me what amount it was going to run, and I told her . . . it would run anywhere from $1,200 to $1,400, taking it out of there. I told her that, standing right there, and Mr. Getchell heard it. I told her, 'We may get out cheaper than that, I don't know.' There was not anything mentioned about her having only $1,000, and when that was spent, the work was to stop. I might have been present when Mr. Getchell and Miss Mustin were discussing it, but I didn't hear her say it. I don't care what they say about my being there. I just know what I heard and what I didn't. If I was there, I wouldn't deny it a bit in the world. If I had heard it, I would tell you I heard it, but I didn't hear it." This evidence of the plaintiff was corroborated in one or more particulars by the testimony of Getchell and two other witnesses.

This evidence clearly authorized the verdict for the plaintiff on the theory that the defendant held Getchell out to the plaintiff as her agent who was fully in charge of whatever work was to be done in connection with the removal of the old spillway and its replacement, and certainly it authorized the jury to find that if Getchell thought, as a professional engineer in charge of the removal of the spillway and the designing of a replacement spillway, that the diversion of the water around the site was necessary or desirable, then he was authorized to have that job done, and that the plaintiff knew that this was the extent of his authority from the language used by the defendant in the plaintiff's presence. Under such circumstances, it really is immaterial whether Getchell was a special or a general agent in the technical

sense of the words, but we think it is apparent that he was merely a special agent, but with authority as outlined above.

We need not cite authority for the proposition that, where there is any evidence to sustain the verdict, this court is without authority to interfere with the order of the trial judge in overruling the general grounds of the motion for new trial.

■ All of the special grounds of the motion for new trial complain of extracts from the charge of the court which, while admittedly correct abstractly, it is contended were not adjusted to the pleadings or the evidence in the case, because there was no proof of general agency in Getchell and no evidence that Getchell was authorized to employ the plaintiff in the diversion of the water; and because they authorized the jury to find that Getchell was a general agent and did not distinguish between a general agent and a special agent. As we have pointed out in the ruling in division one above, there was ample evidence to authorize the jury to find that Getchell was authorized by the defendant to employ the plaintiff to divert the creek. It was not necessary under the evidence that the jury find that Getchell was a general agent of the defendant to enable them to find that he had this authority. The charge of the court was full and fair. The judge charged the jury that, where an engineer is employed in connection with the supervision of work, he is an agent with special powers simply to do the engineering and superintend and direct the work, and as such agent he has no power to alter, amend, or make a new contract for his principal; that one dealing with an agent with limited authority (that is, a special agent) is bound at his peril to know exactly what authority the agent has; that, insofar as the preparation of plans is concerned, an engineer is an independent contractor; and that, if Getchell employed the plaintiff to divert the water to facilitate his preparation of plans for the new spillway or dam, then the plaintiff would not be authorized to recover. All of these propositions are contended for by the plaintiff in error in her brief before this court, and are recognized as correct statements of the law applicable to the issues raised by the evidence in this case. We cannot say as a matter of law that the charges complained of in the seven special grounds were not adjusted to the evidence in the case, but on the contrary they were not erroneous for any of the reasons assigned.

The trial court did not err in denying the motion for new trial as amended.

*Judgment affirmed. Sutton, C. J., Gardner, P. J., Townsend and Carlisle, JJ., concur. Felton, J., dissents.*

FELTON, J. dissenting. I think that the court erred in charging in effect that, if the jury found that W. B. Getchell, a structural engineer, was made the general agent of the defendant for the *removal of the spillway,* the plaintiff could deal with him as a general agent for *the diverting of the stream* unless he was notified that the agency had been revoked. These were entirely separate and distinct projects as to both of which combined no general agency was proved, and the jury were not authorized to find that, if Getchell was a general agent as to the first project, the plaintiff could deal with him as such as to the second project unless the plaintiff was notified that the general agency had been revoked. The law charged would only be applicable where there was proof that there was a general agency as to both projects combined. I express no opinion on the general grounds.