68781. SOUTHEAST GRADING, INC. v. CITY OF ATLANTA.
(324 SE2d 776)

McMURRAY, Chief Judge.

In the latter part of 1978, the City of Atlanta invited numerous contractors to bid on a construction project known as the Three Rivers Water Quality Management Program — Tunnel Construction Task 7B4. On March 28, 1979, S & M Constructors, Inc. (hereinafter "S & M"), a corporation engaged primarily in tunnel construction, submitted the low bid on the project. During the course of preparing its bid, S & M solicited bids from various subcontractors, including Southeast Grading, Inc. (hereinafter "Southeast"), for the removal of excavated material ("muck") from the project site. Southeast responded to S & M's solicitation by submitting a bid to haul the "muck" for a fee. Pursuant to the bid, the hauling fee was to be determined on a cost per cubic yard basis. Southeast's bid was submitted to S & M on January 26, 1979. It provided that S & M could communicate its acceptance of the bid by signing and returning the original bid proposal or by tendering a letter of intent to Southeast.

With regard to the selection of subcontractors, the project specifications called upon the general contractor to "strive for the largest feasible small and minority business enterprise ownership participation . . . and seek to achieve a goal of not less than 20% to 25% overall involvement of such firms. The percentage of Work being performed by a small and minority business enterprise should be calculated on the basis of the total dollar value of the prime contract." The specifications further provided that "[a]ll *potential* first tier sub-contractors (sub-contractors to a prime contractor) and *potential* lower tier sub-contractors (sub-contractors to a first tier sub-contractor) shall be named at the time of the bid submittal." (Emphasis supplied.) Southeast is a minority owned business enterprise. Accord-

ingly, S & M listed Southeast on its bid documentation as one of the "potential minority subcontractors (including lower tiers) to be utilized on this project . . ."

On April 10, 1979, after it was determined that S & M was the low bidder, S & M met with representatives of the city's contract compliance office for a "pre-award" conference. Apparently, the conference was held pursuant to a city ordinance requiring potential contractors to meet with the city's contract compliance officer for the purpose of ensuring "equal employment opportunity." Thereafter, on June 26, 1979, the city awarded the general contract to S & M.

In the meantime, S & M learned that the material which was to be excavated as a result of its tunneling work had value in the Atlanta market. Accordingly, S & M changed its plan for removing the "muck" from the job site. Under the new plan, hauling sub-contractors were to purchase the "muck" from S & M for resale. S & M solicited and received bids from several contractors, including Southeast, for the alternative "Buy-Haul" plan.

Understandably, Southeast was more interested in reaching an agreement with S & M according to the terms set forth in its original January 26, 1979 bid. S & M took the position, however, that it had not entered into a contract with Southeast because the January 26, 1979 bid was never accepted. Accordingly, Southeast sought help from the city's contract compliance office. The record reflects that the city urged S & M and Southeast to come to terms; and that each side submitted compromise offers which were rejected. Additionally, the record reflects that certain city personnel interpreted the listing of Southeast as a "potential" sub-contractor to be a commitment on the part of S & M to use Southeast.

On September 23, 1980, S & M accepted the bid submitted by Southeast for the "Buy-Haul" plan. Accordingly, Southeast and S & M entered into a written "Buy-Haul" contract for the purchase, by Southeast, of the "muck."

Pursuant to the "Buy-Haul" contract, Southeast purchased over $13,000 worth of "muck" from S & M. Because Southeast did not pay S & M for the "muck," S & M brought suit against Southeast in the State Court of Fulton County. Southeast answered and asserted a counterclaim in which it sought damages resulting from the refusal of S & M to contract with Southeast in accordance with the original January 26, 1979 bid. S & M filed a motion for summary judgment in the State Court of Fulton County action. S & M's motion was granted by the state court on May 26, 1983.

On May 11, 1983, before the ruling by the state court, Southeast brought this suit in the Superior Court of Fulton County against S & M and the City of Atlanta. Insofar as it pertained to S & M, the complaint essentially reasserted the allegations set forth in the state

court counterclaim filed by Southeast. Additionally, however, the compliant sought equitable relief vis-à-vis S & M and the city. The complaint also sought damages against the city on the grounds that (1) Southeast was a third-party beneficiary of the general contract; (2) Southeast reasonably relied on city ordinances and the project specifications to support its understanding that it would be the subcontractor; and (3) the city failed to meet its obligation to enforce the minority business enterprise requirements set forth in the general contract. S & M and the city answered the complaint, and thereafter, each defendant moved for summary judgment. On November 14, 1983, Southeast dismissed its complaint against S & M without prejudice. On December 22, 1983, having determined that the City of Atlanta was entitled to judgment as a matter of law, the superior court granted the city's summary judgment motion. This appeal followed. *Held*:

1. Southeast is not a third-party beneficiary of the contract between S & M and the city. "In order for a third party to have standing to enforce a contract under Code Ann. § 3-108 [OCGA § 9-2-20] it must clearly appear from the contract that it was intended for his benefit. The mere fact that he would benefit from performance of the agreement is not alone sufficient. [Cit.]" *Backus v. Chilivis*, 236 Ga. 500, 502 (224 SE2d 370). There must be a promise by the promisor to the promisee to render some performance to a third person and it must appear that both the promisor and the promisee intended that the third person should be the beneficiary. *Stewart v. Gainesville Glass Co.*, 131 Ga. App. 747, 753 (206 SE2d 857); *Donalson v. Coca-Cola Co.*, 164 Ga. App. 712, 713 (298 SE2d 25).

At best, the minority participation provisions of the contract incidentally benefit minority owned businesses. There is nothing in the contract tending to show that promises were made by the city for the benefit of Southeast.

2. "An offer and an acceptance are essential prerequisites to the creation of every kind of contract." *Sheffield v. Whitfield*, 6 Ga. App. 762, 764 (65 SE 807). Thus, the law requires that the parties consent to the formation of a contract: "[U]ntil each has assented to all the terms, there is no binding contract; until assented to, each party may withdraw his bid or proposition." OCGA § 13-3-2 (formerly Code § 20-108). In the case sub judice, the record is devoid of any evidence tending to show that S & M accepted the original January 26, 1979 bid submitted by Southeast.

"[I]t is the law of contracts that an acceptance of a bilateral contract requires communication." *Hartford Fire Ins. Co. v. Steenhuis*, 115 Ga. App. 625, 626 (155 SE2d 690). It is clear that S & M never communicated its "acceptance" of the original January 26, 1979 bid to Southeast. The mere fact that S & M submitted bid documenta-

tion to the city listing Southeast as a "potential" sub-contractor does not demonstrate that S & M assented to the terms set forth in Southeast's January 26, 1979 bid. See *Gainesville Glass Co. v. Don Hammond, Inc.*, 157 Ga. App. 640 (278 SE2d 182). See also Holman Erection Co. v. Orville E. Madsen & Sons, 330 NW2d 693 (Minn. 1983). Thus, we agree with the appellee City of Atlanta that the evidence fails to demonstrate that the January 26, 1979 bid ripened into a contract between Southeast and S & M. Compare *Hilton Constr. Co. v. Rockdale County Bd. of Education*, 245 Ga. 533 (266 SE2d 157).

3. Because S & M was not legally obligated to contract with Southeast, it cannot be said that the city failed to meet any obligations to enforce the "potential" contract. It is of no consequence that certain officials may have interpreted the city's ordinances and the general contract as imposing a duty upon the city to compel S & M to contract with Southeast. City officials cannot establish a duty on the part of the city where none exists by law. OCGA § 45-6-5. See *City of Atlanta v. Bull*, 161 Ga. App. 648 (288 SE2d 335). Thus, Southeast did not reasonably rely upon efforts of city employees to support its undertaking that it would be the sub-contractor.

4. "An existing contract is superseded and discharged whenever the parties subsequently enter upon a valid and inconsistent agreement completely covering the subject-matter embraced by the original contract." *Hewlett v. Almand*, 25 Ga. App. 346 (1) (103 SE 173). Southeast's original bid and the subsequent "Buy-Haul" contract covered the same subject matter, i.e., the removal of the "muck" from the construction site. The terms of the subsequent agreement, obligating Southeast to purchase the "muck" from S & M were obviously inconsistent with the terms of the "potential" contract, which obligated S & M to pay Southeast a fee. Assuming, arguendo, that S & M and Southeast mutually assented to the terms of the January 26, 1979 bid, the original contract was discharged by the "Buy-Haul" contract. *Hewlett v. Almand*, 25 Ga. App. 346 (1), supra. Thus, having voluntarily entered into the subsequent contract, Southeast cannot now complain that the city failed to enforce the superseded original contract.

5. The trial court did not err in granting the city's motion for summary judgment.

*Judgment affirmed. Deen, P. J., and Sognier, J., concur.*

DECIDED NOVEMBER 30, 1984.

*David W. Porter, Jeffrey C. Baxter*, for appellant.

*Alford J. Dempsey, Jr., Jeff S. Klein, Marva J. Brooks*, for appellee.