MALTA CONSTRUCTION
COMPANY, Plaintiff,

v.

HENNINGSON, DURHAM & RICHARDSON INC., and VSL Corporation,
Defendants.

No. 1:88–CV–2029–RHH.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 7, 1988.

Mahlon C. Rhaney, Jr., Griffin Cochrane Marshall & Elg, Atlanta, Ga., for plaintiff.

Kent Taylor Stair, Douglas Allen Wilde, Webb Carlock Copeland Semler & Stair, Howell Hollis, III and Jack N. Sibley, Freeman & Hawkins, Charles Michael Hardman, Jones & Granger, Atlanta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

This matter is currently before the court on defendants' second motions for summary judgment. The defendants' first motions for summary judgment pertained solely to the issues of release and satisfaction. The court concluded that material issues of fact precluded the grant of defendants' motions. Defendants again move for summary judgment on the issues of release and satisfaction. They also base their summary judgment motions on a variety of state law tort and contract doctrines. For the reasons stated below, the court DENIES VSL's motion and PARTIALLY DENIES and PARTIALLY GRANTS HDR's motion. The court also GRANTS plaintiff's motion to file a supplemental memorandum.

## FACTS

This action arises out of delays in the construction of post tension bridges on the South Atlanta Freeway (I-675). The facts of the case are set out in full in this court's order dated June 2, 1987 and will not be fully reiterated here. It suffices to say that plaintiff ("Malta"), the general contractor, alleges it was economically damaged by delays in building the post tension bridges allegedly caused by delays in the preparation and approval of shop drawings prepared by defendants ("VSL" and "HDR"). HDR is an engineering firm which entered into a contract with the Georgia Department of Transportation ("GDOT") to design ten post tension bridges. VSL entered into a contract with Malta's subcontractor, Metropolitan Erection, Inc. ("Metro") to prepare the post tension bridge shop drawings and supply certain materials and equipment for the construction of the post tension bridges. Malta entered into contracts with the GDOT and Metro but was not a named party to the contracts with HDR or VSL.

There is no dispute that Malta's construction of the post tension bridges was substantially delayed and Malta concedes that it suffered only economic damage as a result of the delay. Malta initially brought suit against the GDOT in the Superior Court of Fulton County, Georgia seeking more than $6,000,000 for delay damages allegedly caused in part by GDOT and in part by VSL and HDR. In August of 1986 Malta and GDOT entered into a settlement agreement under which GDOT paid to Malta $2,650,000 in final settlement of Malta's claims against GDOT and Malta executed a release of its claims against GDOT. Although Malta's officials concede that, through their lawsuit against GDOT, they initially sought to be compensated for losses allegedly caused by GDOT, HDR and VSL, they state that their intention upon settling the lawsuit with GDOT was to settle only for those damages caused by GDOT. Malta contends that the settlement with GDOT was in partial satisfaction of its claims and that the release it executed was in favor only of GDOT and not HDR or VSL. In the instant action, Malta brings suit against HDR and VSL in tort and in contract, claiming to be a third party beneficiary of the Metro-VSL and GDOT-HDR contracts.[1]

---

1. In its response to HDR's motion for summary judgment, Malta concedes that, under Georgia law, it is not a third party beneficiary of the contract between GDOT and HDR. Malta's contract claim against HDR is founded entirely upon its status as a third party beneficiary to the GDOT-HDR contract. Therefore, in light of Malta's concession, the court PARTIALLY GRANTS HDR's motion for summary judgment

Both HDR and VSL move for summary judgment on the ground that Malta's settlement with and release of GDOT inure to them. Specifically, HDR argues that it was GDOT's agent and that, as a matter of law, the release of the principal serves to release the agent.[2] VSL argues, as it did in its first motion for summary judgment, that the settlement between Malta and GDOT was in full satisfaction of Malta's claims which included the claims currently raised by Malta against VSL and HDR. Both parties refer to the deposition testimony of GDOT officials who stated that, when they settled with Malta they intended to compensate Malta for its claims against HDR and in full satisfaction of all the claims initially raised by Malta in its suit against GDOT.[3] Although such was the apparent intent of the GDOT, however, Malta officials contend that in settling with GDOT for substantially less than they initially sought in their State court complaint, they did not intend to include the claims against HDR and VSL and did not intend the payment by GDOT to constitute full satisfaction of Malta's original complaint. In addition, Malta submits that HDR was not GDOT's agent but rather acted in the capacity of an independent contractor.

In addition to arguing that the release and satisfaction between Malta and GDOT inure to them, both defendants argue that, because Malta allegedly suffered only pecuniary damages and since it was not in privity with either defendant, the economic loss rule under Georgia law precludes Malta from bringing this action against them in tort. Both defendants also move for summary judgment on the ground that the doctrine of concurrent delay disallows plaintiff's recovery in this action. Defendant VSL moves for summary judgment on two alternative grounds. It contends that Malta is not a third party beneficiary of the contract between Metro and VSL and that

even if it is such a beneficiary, VSL did not breach its contract with Metro. VSL also moves for partial summary judgment on its counterclaim seeking monies allegedly undisputedly owed by Malta on the amounts VSL invoiced Malta. Further facts will be disclosed as necessary for discussion of the motion.

DISCUSSION

I. *Satisfaction and/or Release*

■ As this court stated in its June 2, 1987 order, under Georgia law a release of one joint tortfeaser no longer automatically releases all joint tortfeasers. A release of one joint tortfeaser will not serve to release others for the same harm "unless it is agreed that it will discharge" the other tortfeasers. *Posey v. Medical Center-West, Inc.*, 257 Ga. 55, 59, 354 S.E.2d 417 (1987). An injured party may release one tortfeaser without releasing another "if that is his intention, at least until he has full satisfaction." *Id.* at 58, 354 S.E.2d 417. As noted by this court in its June 2 order, the release executed by Malta against the GDOT on its face does not release either HDR or VSL. There exists a material question of fact as to whether both Malta and GDOT intended to release the defendants in the instant action. Even though GDOT officials now state that they intended the release to inure to these defendants, the release does not name HDR or VSL and Malta officials now state that they did not intend to release HDR or VSL through the release Malta executed with GDOT.

As they did in their first motion for summary judgment, however, the defendants argue that Malta obtained full satisfaction for its claims when it settled the State court action with GDOT. The court recognizes that, even if an injured party releases only one of several tortfeasers, that party

---

and DISMISSES Count II of plaintiff's complaint.

2. In addition to arguing that, as GDOT's "agent", the release executed by Malta in favor of GDOT inured to it, HDR contends that Malta's dismissal with prejudice of the lawsuit against GDOT is res judicata as to it, GDOT's alleged agent.

3. In apparent contradiction of the GDOT officials' deposition testimony, the GDOT stated in a letter to the Federal Highway Department that "The offer tendered by the Department is considered fair compensation for the delay that is directly attributable to the Department." *See* Plaintiff's Exhibit 270.

may not recover against other joint tort-feasers if its recovery against the first tortfeaser was in full satisfaction of its claims. Under Georgia law, however, proof of full satisfaction "is a question of fact that cannot be resolved unless the evidence submitted clearly and unequivocally shows full satisfaction by the first defendant." *Rowland v. Vickers*, 233 Ga. 67, 68, 209 S.E.2d 592 (1974). *See also Williams v. Physicians & Surgeons Community Hospital*, 249 Ga. 588, 592, 292 S.E.2d 705 (1982) (the actual compensation paid to the plaintiff and the intent of the parties to the release are factual questions). In the instant action, although GDOT officials contend that they intended to fully compensate Malta for all its claims (including those against HDR and VSL), Malta officials contend that the settlement with GDOT was not in full satisfaction of its claims.[4] Therefore, even given the newly-taken deposition testimony of GDOT officials, the issue of whether the settlement with GDOT fully compensated Malta for its claims against HDR and VSL involves a disputed factual question that must be resolved by the trier of fact.

In addition to arguing that the settlement with GDOT was in full satisfaction of Malta's claims against it, HDR contends that the release, although not specifically inclusive of HDR, inures to HDR as the alleged agent of GDOT. The Georgia Supreme Court has held that "[u]nless a party is specifically named or identified in a release, he is presumed not to be covered by the release. The burden of proving coverage under the release is on the party asserting that he is covered by the release." *Williams, supra*, 249 Ga. at 592. In the instant action, the release of GDOT executed by Malta does not specifically identify HDR and therefore HDR bears the burden of proving that the release inures to it. To support its argument that it is covered by the release of GDOT, HDR cites *Nannis Terpening & Associates v. Mark Smith Construction Company*, 171 Ga.

App. 111, 318 S.E.2d 760 (1984), as it previously cited in its first motion for summary judgment.

As the court noted in its June 2, 1987 order in which it denied the defendants' motions for summary judgment, *Nannis Terpening* involved a school board that was vicariously liable for the torts of the defendant who the parties expressly recognized was the school board's agent. *Nannis Terpening* clearly stands for the proposition that a release of a principal who is vicariously liable for the acts of its agent will inure to the agent and that a dismissal of an action against the principal will be res judicata to any claims against the agent. Not surprisingly, therefore, HDR argues that it was the GDOT's agent and that the GDOT was vicariously liable for any negligence of HDR.

The contract between the GDOT and HDR does not refer to HDR as the GDOT's agent. The contract is entitled a "consultant services contract" and nowhere defines HDR as an agent or GDOT as a principal. In the contract, HDR is referred to as the "consultant" and, in the only provision which refers to the GDOT's "agents", the contract provides "the CONSULTANT shall be responsible for any and all damages to property or persons and shall save harmless the DEPARTMENT, its officers, agents and employees from all suits [and] claims ... resulting from the negligence of the CONSULTANT...." *See* Exhibit "A" to HDR's Statement of Undisputed Facts, Article VI, p. 10.

While the testimony of GDOT officials tends to support HDR's assertion that it acted as GDOT's agent, "[w]hether or not there is an agency relationship presents a question of fact...." *Aiken v. Drexler Shower Door Co.*, 155 Ga.App. 436, 437, 270 S.E.2d 831 (1980); *See also Wiggins v. Home Owners Warranty Council of Metropolitan Atlanta*, 168 Ga.App. 777, 778, 310 S.E.2d 554 (1983) (the existence of an

---

4. Indeed, as this court noted in its June 2, 1987 order, the Settlement Agreement between Malta and GDOT provides that "both parties recognize and agree that Malta has incurred extra ex-

penses for delays to its performance on the projects; and ... both parties recognize that DOT is not responsible for all extra expenses incurred by Malta."

agency is question for trier of fact).[5] If HDR is found to be the agent of GDOT, the release of GDOT will inure to HDR. The court cannot grant HDR's motion for summary judgment, however, because the issue of whether it was GDOT's agent must be resolved by the trier of fact.[6]

## II. Economic Loss Rule

Defendants argue that Malta's claims against them for negligence must fail upon application of the Georgia economic loss rule which bars recovery in tort where the parties are not in privity and where plaintiff's damages are purely economic (as opposed to injury to the person or property). The general rule, stated and applied by several Georgia Courts of Appeals, is that where a plaintiff sues only for the loss of the benefit of his bargain, recovery is available only in a contract action. "Where there is no accident, and no physical damage, and the only loss is a pecuniary one, ... purely economic interests are not entitled to protection against mere negligence, and so [courts] have denied the recovery." Prosser, Law of Torts, p. 665 (4th Ed. 1971) (quoted in Long v. Jim Letts Oldsmobile, Inc., 135 Ga.App. 293, 217 S.E.2d 602 (1975)). See also Chrysler Corp. v. C.C. Taylor, 141 Ga.App. 671, 234 S.E.2d 123 (1977); Henderson v. General Motors Corp., 152 Ga.App. 63, 262 S.E.2d 238 (1979).

Until 1983, the Georgia Supreme Court did not address the application of the economic loss rule and therefore, the Court of Appeals' decisions strictly applying the rule were followed as the law of Georgia. See e.g., Flintkote Co. v. Dravo Corp., 678 F.2d 942 (11th Cir.1982). In 1983, however, the Georgia Supreme Court carved out a narrow exception to the strict privity-economic loss rule. In Robert & Company

Associates v. Rhodes–Haverty Partnership, 250 Ga. 680, 300 S.E.2d 503 (1983), the court noted that "[c]ourts have been reluctant to extend liability in negligent misrepresentation cases where no privity appears and where the loss was merely economic and involving neither physical harm nor injury to property." Id. at 681, 300 S.E.2d 503. The court then criticized such reluctance and enunciated an exception to the strict economic loss rule stating that, even in the absence of privity and where damages are purely economic,

"one who supplies information during the course of his business, profession, employment, or in any transaction in which he has a pecuniary interest has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended that it be so used."

Id. at 681–82, 300 S.E.2d 503. This tort liability applies to the negligent supply of false information—in other words, the making of misstatements or failure to disclose facts—and is limited to a foreseeable third person where the third party justifiably relied on the information. See also Gulf Contracting v. Bibb County, 795 F.2d 980, 982 (11th Cir.1986) (false facts, false opinions, misstatements and omissions are all within the scope of tort liability running from supplier of information to foreseeable third party who reasonably relies on the information).

The allegations of plaintiff's complaint which pertain to the alleged negligence of the defendants appear to fit within the above exception to the strict privity—economic loss rule. Malta alleges that HDR and VSL supplied Malta with deficient drawings and plans which resulted in

---

**5.** The language of Mustin v. Barnes, 88 Ga.App. 596, 600, 77 S.E.2d 94 (1953) undercuts HDR's argument that it acted as GDOT's agent. In Mustin the Georgia Court of Appeals held that "insofar as the preparation of plans is concerned, an engineer is an independent contractor" and the defendant who hired the engineer to produce plans is not vicariously liable for the negligence of the engineer-independent contractor.

**6.** Citing Nannis Terpening, HDR also argues that Malta's dismissal of the state court action against GDOT with prejudice is res judicata to any claims against HDR. As with the issue of the release of GDOT, the issue of whether the dismissal with prejudice is a bar to this action against HDR turns on whether HDR is found by the trier of fact to be GDOT's agent.

damaging delays to the construction of the post tension bridges. Although Malta is not in privity with HDR or VSL and although its damages are concededly economic only, the defendants allegedly negligently supplied Malta, a foreseeable third party, false or misstated information and/or negligently failed to disclose accurate information. The defendants allegedly supplied the information for plaintiff to rely on and act upon.

The alleged facts in the instant action are more similar to the facts in *Robert & Company* and *Gulf Contracting* than in the earlier Georgia Courts of Appeals cases cited by defendants. In *Robert & Company* the Georgia Supreme Court affirmed a lower court holding that an engineer who issues a report on the condition of a building is liable to prospective purchasers of the building even though there was no privity between the engineer and purchasers and the purchasers suffered purely economic damages. Similarly, in *Gulf Contracting* the Eleventh Circuit applied Georgia law and reversed a trial court's grant of summary judgment in favor of architects and engineers as against the plaintiff-contractor. In that case, the Eleventh Circuit referred to *Robert & Company* and held that a project engineer and architect could be held liable to a contractor for "their failure to adequately describe construction requirements through their specifications and materials." *Gulf Contracting, supra,* 795 F.2d at 982. Unlike the above two cases, the cases cited by defendants to support their contention that the economic loss rule bars Malta's negligence claim against them were either decided prior or to the Georgia Supreme Court's ruling in *Robert & Company* or were not cases of negligent supply of false information. Therefore, the economic loss rule does not bar plaintiff from proceeding to trial on its allegations that defendants negligently provided deficient plans and drawings.

■ Although the court believes that Malta's claims that HDR and VSL failed to adequately provide information (plans and drawings) are not barred by the economic loss rule because of the narrow exception to that rule enunciated in *Robert & Company,* the court finds that one of Malta's claims against HDR does not fit within the exception and is more akin to the acts found to be barred by the economic loss rule. In addition to alleging that HDR provided deficient plans and special provisions to Malta, Malta alleges in its complaint that "HDR failed to promptly and adequately review shop drawings submitted by Malta" for certain bridges. Complaint, ¶ 10. HDR's alleged negligent review of drawings is not like negligent misrepresentation or supply or omission of information. Instead, such acts are like the alleged negligent failure to supervise and to approve change orders that the *Gulf Contracting* court held did not fall within the privity exception for negligent misrepresentation.[7] Therefore, the court partially grants HDR's motion for summary judgment on the economic loss rule and strikes ¶ 10 from plaintiff's complaint. The remainder of Malta's tort allegations fall within the negligent misrepresentation exception to the economic loss rule and therefore are not barred.

### III. Third Party Beneficiary of Contract Between Metro and VSL

By contract with Metro, VSL was required to "[c]omplete post tensioning package minus labor including necessary shop drawings, material, freight; five days of technical field assistance; as required in the purchase order between Malta Construction Company, Inc., and Metropolitan Erecting Company, Inc. ..." Plaintiff's Exhibit 179, "Purchase Order" from Metro to VSL. The referenced purchase order between Metro and Malta required Metro to perform all work in a timely manner to fit Malta's progress schedule. The Metro–Malta purchase order further specified that supplies would be procured from VSL, that VSL would submit shop drawings to Malta and that Malta would issue checks for in-

---

**7.** *See also R.H. Macy & Co. v. Williams Tile & Terrazzo,* 585 F.Supp. 175 (N.D.Ga.1984) (Ward, J.) (negligent failure to investigate, inspect or test tile held not actionable where no privity and purely economic damages).

voiced materials in the joint names of VSL and Metro. In addition to requiring that VSL perform "as required in the purchase order between" Malta and Metro, the VSL–Metro contract specifically provided that VSL would submit shop drawings and invoices directly to Malta. Malta alleges that VSL breached its contract with Metro by allegedly failing to promptly provide shop drawings (as required in the purchase order between Malta and Metro which was incorporated in the contract between Metro and VSL). Malta further contends that it is a third party beneficiary of the Metro–VSL contract and entitled to sue VSL for breach of the contract.

Generally under Georgia law, a person who is not a party to a contract cannot sue to enforce the contract. In order to have standing to sue on a contract a third party must clearly appear to be an intended beneficiary of the contract. The intention to benefit a third party must be clearly manifested from a construction of the contract as a whole. "There must be a promise by the promisor to the promisee to render some performance to a third person and it must appear that both the promisor and the promisee intended that the third person should be the beneficiary." *Southeast Grading, Inc. v. City of Atlanta,* 172 Ga. App. 798, 800, 324 S.E.2d 776 (1984). The mere fact that a third party might benefit from the effectuation of a contract is not alone sufficient to vest the third party with standing to enforce the contract. *Id.* (citing *Backus v. Chilivis,* 236 Ga. 500, 502, 224 S.E.2d 370 (1976)).

Although VSL cited a number of cases in which a third party was found not to be an intended third party beneficiary, the court finds that the contract between Metro and VSL clearly indicates an intention to benefit Malta. The Metro–VSL purchase order contains a "promise by the promisor [VSL] to the promisee [Metro] to render some

performance to a third person [supply shop drawings directly to Malta and in the manner required in the purchase order between Malta and Metro]." The Metro–VSL contract indicates clearly on its face that both Metro and VSL intended Malta to be the beneficiary who would receive the shop drawings. Pursuant to the VSL–Metro purchase order, VSL was to submit shop drawings and invoices directly to Malta and Malta was to issue checks for the invoiced materials jointly to Metro and VSL. In addition, the Metro–VSL contract incorporates the purchase order between Malta and Metro, providing that VSL must perform as required in the latter purchase order.

The cases cited by VSL to support its contention that Malta was merely an incidental, as opposed to intended, beneficiary of the Metro–VSL contract are distinguishable from the instant case. In *American Fletcher Mortgage Co., Inc. v. First American Investment Corporation,* 463 F.Supp. 186 (N.D.Ga.1978) (Moye, J.), the contract at issue, between defendants and Futren, did not provide for the payment of any funds to plaintiff but rather provided for loan obligations running solely to Futren, a party to the contract. Any reference to plaintiff in the contract between defendants and Futren simply indicated a recognition of Futren's, not defendants', obligations to plaintiff. In the instant action, the contract between Metro and VSL does provide for payments between plaintiff and defendant VSL and does set forth obligations running between VSL and plaintiff. The references to Malta in the Metro–VSL contract were not merely indications of Metro's obligations to Malta but were in fact specific provisions setting forth VSL's obligations to Malta.[8] Construction of the Metro–VSL contract as a whole indicates that Malta was an intended beneficiary of the contract. Thus, Malta

---

**8.** Similarly distinguishable is McWhirter Material Handling Co., Inc. v. Georgia Paper Stock Co., Inc., 118 Ga.App. 582, 164 S.E.2d 852 (1968), cited by VSL, in which the benefits provided to plaintiff did not originate on the contract on which plaintiff sued. Because the benefits to plaintiff originated on a separate contract from the contract plaintiff sought to enforce, the Georgia Court of Appeals held that the plaintiff was not an intended beneficiary of the contract it sought to enforce. In the instant case, plaintiff seeks to sue on a contract under which the benefit to plaintiff (the prompt supply of shop drawings by VSL) did originate.

has standing to sue VSL for breach of the contract.

VSL contends, however, that even if Malta is a third party beneficiary of the Metro–VSL contract, VSL did not breach the contract and therefore Malta's contract claim must fail. VSL argues that it did not breach its contract with Metro because it did provide materials and shop drawings and the bridges have been completely constructed. Malta does not dispute the fact that the bridges have been built and that VSL eventually provided materials and shop drawings as required by the Metro–VSL contract. Malta alleges, however, that VSL breached the contract by failing to timely provide shop drawings and equipment as required in the Malta–Metro contract which was specifically incorporated into the Metro–VSL contract. The court agrees with Malta that the Metro–VSL contract, through reference to the Malta–Metro contract which was attached to the Metro–VSL contract, specifically provided for performance by VSL that was in accordance with the Malta–Metro contract. Whether VSL performed in such a manner or whether it breached the contract, however, is a question to be resolved by the trier of fact.

## IV.  *Concurrent Delay*

■ Both defendants argue that Malta cannot prevail on its damages claims because Malta allegedly cannot prove that defendants alone were responsible for the delays which allegedly injured Malta. The defendants contend that the doctrine of concurrent delay precludes plaintiff's recovery. Under that doctrine, "where each party proximately contributes to the delay, 'the law does not provide for the recovery or apportionment of damages occasioned thereby to either party.'" *Anderson v. Golden,* 569 F.Supp. 122, 145 (S.D.Ga.1982) (quoting *J.A. Jones Construction Co. v. Greenbriar Shopping Center,* 332 F.Supp. 1336 (N.D.Ga.1971), *aff'd,* 461 F.2d 1269 (5th Cir.1972)).

Although defendants correctly quote the law on concurrent delay, the cases they cite to support their motion for summary judgment do not stand for the proposition that Malta is precluded from recovering its damages *as a matter of law.* Both cases cited by defendants involved findings of facts and conclusions of law by the court upon completion of a full trial. In the instant case, defendants seek to have this court find as a matter of law that Malta, as well as HDR, VSL, Metro and GDOT, contributed to the delay which allegedly damaged Malta. The evidence on the issue of Malta's or Metro's and GDOT's responsibility for the delay which gave rise to this action is in dispute. Malta's expert witness states that he did not include in his damages calculation any delay caused by Malta, Metro or GDOT. Therefore, although the doctrine of concurrent delay does bar a plaintiff from recovering damages where that plaintiff proximately contributed to the delay, the trier of fact in the instant action must determine whether the damages sought by Malta include those which were proximately caused by parties in addition to HDR and VSL.

## V.  *VSL's Counterclaim*

VSL filed a counterclaim against Malta alleging that VSL provided equipment, material, services and shop drawings to Malta, that VSL invoiced Malta for these items and that Malta has refused to pay VSL the amounts due on the invoices. VSL moves for partial summary judgment on its counterclaim, arguing that the monies due under the VSL invoices is undisputed and that the court may grant VSL's motion on its counterclaim but stay enforcement of the final judgment on the counterclaim pending the disposition of plaintiff's claims at trial. VSL cites both a Georgia Appeals Court case and a federal district court case wherein the courts granted the counterclaimants' motion for summary judgment and stayed the entry of final judgment pending the resolution of the underlying case. In both cases, however, the counterclaimant was entitled to judgment on their counterclaims as a matter of law.

In *W. Linton Howard, Inc. v. Gibbs Machinery, Inc.,* 169 Ga.App. 627, 314 S.E.2d 259 (1984), the Georgia Court of Appeals

affirmed the grant of the plaintiff's motion for summary judgment on the ground that the invoices which formed the basis of the complaint were undisputedly correct and that the defendant's defenses to the complaint were "without merit, and no genuine issue of material fact remained for consideration by a jury." *Id.* at 628, 314 S.E.2d 259. In *Electroglas, Inc. v. Dynatex Corp.*, 473 F.Supp. 1167 (N.D.Cal.1979), the court found that the undisputed facts indicated that plaintiffs received what they bargained for under the contract on which the counterclaim was brought and that plaintiffs could not avoid paying for goods they received.

In the instant action, Malta officials contend they did not receive what they bargained for with VSL. Malta alleges that VSL breached its contract with Metro and that because of the breach the VSL invoices which form the basis of VSL's counterclaim are not correct. Because Malta disputes the amounts owed under the invoices, there remains a genuine issue of material fact on the counterclaim. Malta's assertion that it did not receive what it bargained for and that it does not owe the amounts invoiced by VSL is dissimilar from the fact situations of the cases cited by VSL.

The court believes that the Georgia Court of Appeals case of *H.G. Hastings Co. v. Long & Patrick Nursery, Inc.*, 166 Ga.App. 228, 303 S.E.2d 768 (1983) is more similar to the case at hand. In *Hastings* the court reversed the trial court's grant of summary judgment in an action on an alleged open account indebtedness. The defendant in *Hastings* stated that the merchandise for which it was invoiced and which it received was damaged and not of the quality ordered. The *Hastings* court therefore held that "a fact issue concerning the amount of the debt, if any" remained to be tried. Likewise, in the instant action, in view of the plaintiff's dispute of the amounts due VSL, the court cannot say as a matter of law that VSL is entitled to the full amounts reflected on the invoices to Malta.

CONCLUSION

For all the reasons stated above, the court DENIES defendant VSL's motion for summary judgment in its entirety. The court PARTIALLY DENIES and PARTIALLY GRANTS defendant HDR's motion for summary judgment. The court GRANTS HDR's motion with regard to paragraph 10 and Count II of plaintiff's complaint and hereby STRIKES those paragraphs from the complaint. The court DENIES the remainder of HDR's motion for summary judgment. Finally, the court GRANTS plaintiff's motion to file a supplemental memorandum.

At trial, one issue the trier of fact will be called on to resolve is whether HDR acted as GDOT's agent. If an agency relationship existed between GDOT and HDR then, as a matter of law, the case must be dismissed against HDR as a result of the release of and dismissal of the state court case against GDOT. The trier of fact will also be required to decide the issue of whether Malta, in settling its claims with GDOT, received full satisfaction of its claims including those claims brought against defendants in the instant case. If the trier of fact concludes that Malta did receive full satisfaction, the case against both HDR and VSL must be dismissed. The third issue before the trier of fact will be whether Malta itself contributed to the delay for which it now seeks compensation. If the trier finds that Malta and/or Metro or GDOT (whom Malta has released) proximately contributed to the damages which are the subject of this litigation, Malta will be barred from recovering those damages. Finally, if the trier of fact determines that VSL and HDR were not negligent and that VSL did not breach its contract with Metro then Malta may not recover against the defendants and VSL must prevail on its counterclaim.