TTCP ENERGY FINANCE FUND
II, LLC, Plaintiff,

v.

RALLS CORPORATION, Sany America,
Inc., Sany Electric Co., Ltd., Sany
Group Co., Ltd., and Sany Heavy En-
ergy Machinery Co., Ltd., Defendants.

CIVIL ACTION FILE NO.
1:16–cv–3287–TCB

United States District Court,
N.D. Georgia, Atlanta Division.

Signed 06/01/2017

David Andrew Baay, Eversheds Sutherland (US) LLP–H. TX, Houston, TX, James Allen Orr, Eversheds Sutherland LLP–GA, Atlanta, GA, James Louis Silliman, Everette Law Firm, LLC, Lawrenceville, GA, for Plaintiff.

David E. Harrell, Jr., Locke Lord Bissell & Liddell LLP–Houston, Scott L.

Friedman, Locke Lord Bissell & Liddell LLP–Houston, Houston, TX, Bryan Guy Harrison, Locke Lord LLP–ATL, Michael Wolak, III, Freeman Mathis & Gary, LLP, Atlanta, GA, for

## ORDER

Timothy C. Batten, Sr., United States District Judge

This case comes before the Court on the joint motion to dismiss filed by Defendants Ralls Corporation and Sany America, Inc. [24].[1]

## I. Factual Background [2]

This lawsuit arises from Plaintiff TTCP Energy Finance Fund II, LLC's purchase of a wind-power generation project located in Huerfano County, Colorado. The project was conceptualized and initially owned and managed by Christine, Daniel, and Darren Schaefer, who jointly owned New Centennial Power, LLC. On March 22, 2013, U.S. Innovative Renewable Energy ("USIRE") purchased New Centennial Power from the Schaefer family. On that same date, New Centennial entered into a loan agreement with Defendant Ralls pursuant to which Ralls provided the capital to construct the project and was engaged to serve as the primary builder and general contractor of the project. The project became operational in October 2013.

In late 2013 and early-to-mid-2014, it became clear to Ralls that New Centennial—which had been renamed Huerfano River Wind, LLC ("HRW")—had defaulted or would default on the loan agreement, so Ralls began to seek additional debt financing for the project. Ralls advertised the project to various potential investors,

including Plaintiff TTCP, a renewable-energy investment fund. In so doing, Ralls used marketing materials that were developed by Defendants Sany America, Sany Electric, Sany Group, and Sany Heavy Energy Machinery (collectively, the "Sany Defendants") for the specific purpose of attracting investors.

The Sany Defendants' marketing materials specifically touted the project's production capacity. In mid-2014, however, TTCP learned that the project's actual production capacity was lower than represented. When TTCP questioned Ralls about this discrepancy, Ralls sought to reassure TTCP that the actual capacity was even greater than represented in the Sany marketing materials but that the 2014 production capacity had been intentionally curtailed due to USIRE's/HRW's default under the loan agreement. In September 2014, based on Ralls's representations and reassurances, TTCP purchased the project by acquiring USIRE's interest in HRW.

TTCP quickly came to suspect that Defendants had exaggerated the project's production capacity to induce TTCP's acquisition of the project. By the end of 2014, the project's actual production numbers were significantly below those contained in the Sany marketing materials and in Ralls's reassurances in mid-2014. In early 2015, TTCP repeatedly asked Ralls for an updated analysis or explanation of the project's performance. Ralls ignored TTCP's requests for extended time periods, and when it finally did respond, it changed its story regarding production shortfalls.

---

1. The remaining three Defendants—Sany Electric Co., Ltd., Sany Group Co., Ltd., and Sany Heavy Energy Machinery Co., Ltd.—have not yet appeared in this case.

2. For purposes of Defendants' motion to dismiss, the factual averments in Plaintiff's first amended complaint are presumed to be true and viewed in a light most favorable to Plaintiff. *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011).

Prior to TTCP's investment in the project, Ralls had indicated that the poor performance resulted from an intentional effort to curb production because of USIRE's/HRW's breach of the loan agreement and a lack of incentive to attend to problems in a timely manner. After TTCP purchased the project and pressed Ralls for an explanation for the continuing poor performance, Ralls admitted that the problem was a lack of wind at the project site. In April 2016, Defendants produced a Sany-branded analysis that revised production capabilities to less than what was contained in the initial marketing materials, but still more than the actual production numbers that had been achieved in 2015. Frustrated by Defendants' inconsistent reports, TTCP commissioned its own independent analysis that confirmed that the project's production capacity was between as much as thirty-two percent less than Defendants had forecasted.

In addition to being party to the misrepresentations that led TTCP to invest in the project, Ralls is also alleged to have failed in its obligations to maintain and operate the project as it promised it would, both before and after TTCP's acquisition, as detailed in the amended complaint. *See* [19] at ¶¶ 35–52. In July 2016, moreover, Ralls curtailed the project for three weeks, contrary to TTCP's instructions, causing the project to be further devalued. TTCP avers that as a result of Defendants' conduct, the project is significantly less valuable than it would be if its production capacity were as advertised and if it had been properly maintained and operated.

Based on these averments, TTCP brings claims against Ralls and the Sany Defendants for fraudulent inducement and negligent misrepresentation. It also asserts claims against Ralls alone for breach of contract and breach of warranty (as to both the project's production capabilities and Ralls's maintenance obligations).

TTCP seeks compensatory and punitive damages as well as an award of attorneys' fees pursuant to O.C.G.A. § 13–6–11. Ralls and Sany America have moved to dismiss TTCP's amended complaint for failure to state a claim.

## II. Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). This pleading standard does not require "detailed factual allegations," but it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Under Rule 12(b)(6), a claim will be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal citation omitted). Thus, a claim will survive a motion to dismiss only if the factual allegations in the pleading are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

In addition to these generally applicable pleading standards, Rule 9(b) re-

quires that a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." This rule serves the dual purpose of ensuring that a complaint "alert[s] defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal punctuation omitted).

■ To satisfy Rule 9(b), a complaint must plead "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *WESI, LLC v. Compass Envtl., Inc.*, 509 F.Supp.2d 1353, 1358 (N.D. Ga. 2007) (further explaining that Rule 9(b) "requires plaintiffs in a fraud case to specify the who, what, where, when, why and how of the alleged fraud"). Significantly, however, "[t]he application of Rule 9(b) ... must not abrogate the concept of notice pleading," and thus that rule must be read in conjunction with the requirements of Rule 8. *Ziemba*, 256 F.3d at 1202. And "when specific factual information about the fraud is peculiarly within the defendant's knowledge or control," the particularity requirement of Rule 9(b) "may be applied less stringently." *Hill v. Morehouse Med. Assocs., Inc.*, No. 02-14429, 2003 WL 22019936, at *3 (11th Cir. 2003) (per curiam).

■ In considering a party's motion to dismiss under Rule 12(b)(6), the allegations in the pleading must be accepted as true and construed in the light most favorable to the pleader. *Powell*, 643 F.3d at 1302. But the Court need not accept as true "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," nor legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949–50; *Chaparro*, 693 F.3d at 1337.

Thus, evaluation of a motion to dismiss requires two steps: (1) eliminate any allegations in the pleading that are merely legal conclusions, and (2) where there are well-pleaded factual allegations, "assume their veracity and ... determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

### III. Analysis

■ Ralls and Sany America argue that TTCP has not pled its claims of fraud and negligent misrepresentation with the specificity required by Rule 9(b). They first point to TTCP's grouping of Defendants, and indeed, it is true that the complaint avers that "the Sany Defendants" collectively engaged in certain conduct. [19] at ¶¶ 19–21 & 31. Both this Court and the Eleventh Circuit have on many occasions condemned the practice of referring to multiple parties in a general, collective manner. *See, e.g., Beckwith v. Bellsouth Telecomms. Inc.*, 146 Fed.Appx. 368, 372 (11th Cir. 2005); *T-12 Entm't, LLC v. Young Kings Enters., Inc.*, 36 F.Supp.3d 1380, 1387 (N.D. Ga. 2014).

Here, however, TTCP has not grouped all Defendants together, but only the Sany Defendants, which are related entities alleged to have engaged in the same misconduct. *Cf. Techjet Innovations Corp. v. Benjelloun*, 203 F.Supp.3d 1219, 1232–33 (N.D. Ga. 2016) (finding that a complaint improperly grouped defendants in violation of Rule 9(b) where there were seven defendants, consisting of both individuals and entities, and it was unclear who the plaintiff contended was responsible for the misrepresentations alleged in the complaint).

In addition, TTCP's practice of grouping is not pervasive throughout the complaint such that it is impossible to know which claims are being asserted against which Defendant(s). TTCP has referred collectively to the "Sany Defendants" in only a

handful of paragraphs. *See* [19] at ¶¶ 19–21, n.1, & 31. Those allegations are also supported by the averments that "the Sany Defendants collectively developed the marketing materials," and more specifically, that the materials "were branded by Sany Electric, contain Sany America's contact information, ... contain information provided by Sany Heavy and Sany Group," and "utilize the Sany logo which is common to all Sany Defendants." *Id.* at ¶ 19. Stated differently, TTCP's allegation is not that *some* Sany Defendant made certain misrepresentations, but that *all* the Sany Defendants made those misrepresentations.

At the motion-to-dismiss stage, TTCP is not required to articulate the precise role that each Defendant played. Indeed, without discovery, it would be impossible for TTCP to more precisely describe the respective conduct of four related entities. It is enough for now that TTCP specifies the manner in which each of the four Sany Defendants was involved in the development of the marketing materials and then generally avers that the Sany Defendants collectively are responsible for the misrepresentations contained therein.

The Court also agrees with TTCP that the averments of and attachments to the first amended complaint, when read as a whole and in the proper context, provide sufficiently detailed information about the misrepresentations and omissions at issue to warrant denial of the motion to dismiss. TTCP's amended complaint does not contain the type of conclusory, unsupported allegations that would require re-pleading. It contains adequate information to allow Defendants to understand the nature of the claims against them and to prepare a response.

▪ ■ Defendants next contend that TTCP's claims are barred to the extent they are premised on representations made prior to and not included in the final forbearance and settlement agreement, which contained a merger clause. They also argue that any alleged oral agreements are barred by operation of the parol evidence rule. At this stage of the case, the Court declines to so hold.

■ Under Georgia law, the parol evidence rule and the presence of a merger clause do not generally bar a claim for fraud or negligent misrepresentation when "one of the parties interfered with the *ability* of the other to ascertain the real nature of the bargain into which he was entering." *Schlange–Schoeningen v. Parrish*, 767 F.2d 788, 793 (11th Cir. 1985) (citing *Condios, Inc. v. Driver*, 145 Ga.App. 537, 244 S.E.2d 85, 87 (1978)). Defendants suggest that this rule is inapplicable in light of the fact that TTCP "admittedly was aware of the allegedly false representations ... prior to entering into the agreement." [29] at 11. However, this ignores the amended complaint's averment that when TTCP questioned Ralls about the discrepancy between the actual numbers and the promised numbers, Ralls made misrepresentations about the project's production capacity in order to assuage TTCP's concerns and induce it to enter into the agreement. *See* [19] at ¶¶ 22–25.

■ Finally, Defendants argue that TTCP's fraud and misrepresentation claims are barred by the economic-loss rule. Initially, the economic-loss rule applies only between contracting parties. *Hanover Ins. Co. v. Hermosa Constr. Grp.*, 57 F.Supp.3d 1389, 1395–96 (N.D. Ga. 2014). As it is undisputed that Sany America was not a party to the agreement, the economic-loss rule does not bar any of TTCP's tort claims against it.

■ And as for TTCP's claims against Ralls, reliance on the economic-loss rule as a basis for dismissal would be premature

at this time. Georgia law recognizes an exception to the economic-loss rule where one negligently supplies false information in connection with a transaction in which he has a pecuniary interest and that information is justifiably relied upon by a foreseeable person. *Malta Constr. Co. v. Henningson, Durham & Richardson, Inc.*, 694 F.Supp. 902, 906 (N.D. Ga. 1988); *Robert & Co. Assocs. v. Rhodes–Haverty P'ship*, 250 Ga. 680, 300 S.E.2d 503, 504 (1983). At the motion-to-dismiss stage, where the allegations in TTCP's amended complaint must be presumed true, the Court cannot conclude as a matter of law that the misrepresentation exception to the economic-loss rule is inapplicable to TTCP's claims.

Accordingly, Defendants' motion to dismiss will be denied, but nothing in this Order precludes Defendants from reasserting, at summary judgment or trial, any argument or defense relating to the parol evidence rule, the agreement's merger clause, the economic-loss rule, or any other argument made in support of dismissal that does not pertain to alleged pleading deficiencies.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss [24] is denied. Ralls and Sany America shall file their answer(s) to TTCP's amended complaint within fourteen days.

IT IS SO ORDERED this 1st day of June, 2017.

